**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000419
20-AUG-2013
09:29 AM**

NO. CAAP-11-0000419

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DANA WILLIAMS, Plaintiff-Appellant,
v.
CHRISTINE KANEMARU, DENISE BLAS-PHILLIPS,
Defendants-Appellees,
and
JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-0236)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Reifurth and Ginoza, JJ.)

Plaintiff-Appellant Dana Williams ("Williams") appeals from the April 19, 2011 Final Judgment entered in favor of Defendants-Appellees Christine Kanemaru ("Kanemaru") and Denise Blas-Phillips ("Blas-Phillips") (collectively, "Defendants") in the Circuit Court of the First Circuit ("Circuit Court").[1] Williams sought recovery against the Defendants under theories of intentional infliction of emotional distress ("IIED") and libel/slander ("defamation").

On appeal, Williams argues that the Circuit Court erred in granting the Defendants' motion to dismiss the Complaint filed on February 1, 2010 or, in the alternative, for summary judgment ("Motion to Dismiss/MSJ"), filed August 24, 2010, because "there remained triable issues of material fact with which a jury could

---

[1] The Honorable Patrick W. Border presided.

find in favor of Williams."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Williams's points of error as follows:

In ruling on the Motion to Dismiss/MSJ, the Circuit Court considered supporting documents, separate from the pleadings; thus, the Motion to Dismiss/MSJ was disposed of as a motion for summary judgment. *See* Haw. R. Civ. P. 12(b). Therefore, it is Williams's task to show that the Circuit Court erred in entering summary judgment in Defendants' favor.

A.    Defamation

Williams's Complaint, as supported by her declaration attached to her memorandum in opposition to the Motion to Dismiss/MSJ, states that Defendants defamed her by (1) accusing her of being a racist and (2) stating that Williams (a) bragged about being suspended, (b) retaliated against her accuser, and (c) brought down morale in the operating room.[2] According to Williams, the defamation occurred during three in-office meetings that Williams had with the Defendants over a four-month period concerning an investigation conducted by the Defendants "related to concerns about the climate in the Operating Room and allegations that I contributed to creating the negative climate due to my derogatory comments and treatment of others." The first meeting was attended by Williams and the Defendants, while the second meeting included only Williams and Blas-Phillips. The third meeting included Williams, the Defendants, and another employee, Jody, who attended in response to Williams's request for a witness, although Jody was not the witness that Williams had requested.

To establish a claim for defamation, a plaintiff must establish four elements:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

---

[2]    In her opening brief, Williams also argued that Defendants falsely accused her of "harassing co-employees," "being hostile," and "needing professional help, i.e., being mentally ill." Williams, however, failed to allege these purportedly defamatory statements in her Complaint.

(c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Gold v. Harrison*, 88 Hawai'i 94, 100, 962 P.2d 353, 359 (1998) (brackets in original) (quoting *Dunlea v. Dappen*, 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996)).

"Statements of opinions are not automatically immune from defamation actions[,]" *Wilson v. Freitas*, 121 Hawai'i 120, 128, 214 P.3d 1110, 1118 (App. 2009) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17-22 (1990)), although, ultimately, "[the] threshold question in a defamation suit is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id.* (quoting *Uneiko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)) (internal quotation mark omitted). "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." RESTATEMENT (SECOND) OF TORTS § 566 (1977). "A simple expression of opinion based on disclosed . . . nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *Id.* cmt. c. The rationale behind this rule is that when the facts are disclosed, third parties will understand that they are hearing the defendant's "interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts." *See Standing Comm. on Discipline of the U.S. Dist. Court for the Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995).

Here, as presented in Williams's declaration, Defendants' alleged accusation that Williams was a "racist" occurred during an interview as part of an investigation into the climate of the operating room and complaints that Williams was mistreating others. Defendants allegedly accused her of being racist because she did not like Barack Obama and said that he

3

looks like a "bobble head" and because she made fun of a colleague's manner of speech. Williams does not dispute that she said that Barack Obama looked like a bobble head, and she admitted that she made fun of her fellow colleague's manner of speech, adding only that her coworkers do so as well.

Thus, Defendants' alleged statement that accused Williams of being a racist, as presented, is merely an opinion characterizing Williams based on disclosed facts that Williams apparently recognizes as true. Because the basis for the opinion was disclosed, if the opinion were deemed unfounded or unfair, the listener would be free to reject it. *See Yagman*, 55 F.3d at 1439. Thus, the Circuit Court correctly granted summary judgment on Williams's defamation claim based on the Defendants allegedly stating that Williams was a racist.

The remaining allegedly defamatory statements fail because they were privileged in the context of the intra-corporate investigation.[3/] "A qualified privilege arises (1) when the author of a defamatory statement reasonably acts in the discharge of some public or private duty, legal, moral, or social and (2) where the publication concerns a subject matter in which the author and the recipients of the publication have a correlative interest or duty." *Kainz v. Lussier*, 4 Haw. App. 400, 404, 667 P.2d 797, 801 (1983) (citing *Aku v. Lewis*, 52 Haw. 366, 477 P.2d 162 (1970)).

"A qualified privilege can be lost if the defendant abused the privilege by acting with malice." *Farmer ex rel. Keomalu v. Hickam Fed. Credit Union*, No. 27868, 2010 WL 466007, at *9 (Haw. Ct. App. Feb. 2, 2010). "[W]here malice is alleged to extinguish a qualified privilege, defendant is required to act as a reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support

---

[3/] Satisfaction of the publication element requires that a plaintiff establish that the false and defamatory statement was "communicated to some third party other than the person defamed." *Gonsalves v. Nissan Motor Corp. in Hawai'i*, 100 Hawai'i 149, 171, 58 P.3d 1196, 1218 (2002) (quoting *Runnels v. Okamoto*, 56 Haw. 1, 3, 525 P.2d 1125, 1127 (1974)); *see also* RESTATEMENT (SECOND) OF TORTS § 577(1) (1977). Although some jurisdictions have held that a communication can be published between agents of the same principal, *see* RESTATEMENT (SECOND) OF TORTS § 577 cmt. i, we need not decide here whether publication occurred.

it, and the importance of conveying the information." *Towse v. State*, 64 Haw. 624, 632-33, 647 P.2d 696, 703 (1982) (quoting *Russell v. American Guild of Variety Artists*, 53 Haw. 456, 463, n.4, 497 P.2d 40, 45, n.4 (1972)) (internal quotation marks omitted).

Williams presented evidence that Blas-Phillips, with Kanemaru and "Jody, the unit scheduler"[4] present, stated that Williams bragged about being suspended, retaliated against her accuser, and brought down the morale in the operating room. Defendants argue that these statements merely framed the issues involved in their investigation and that they were protected from liability by virtue of a qualified privilege — that they "had a public and private duty to investigate claims for harassment and discrimination based on internal Pali Momi Medical Center policies, and state and federal law." In reply, Williams contends that the workplace investigation "was a mere pretext for punishing Williams for speaking out against the Defendants-Appellees' presidential hopeful."

Whether a qualified privilege exists is a question of law, but the issue of whether the privilege was abused is normally a question of fact for the jury. *See Calleon v. Miyagi*, 76 Hawai'i 310, 319, 876 P.2d 1278, 1287 (1994). But, as with other questions of fact examined in the context of a motion for summary judgment, a non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Haw. R. Civ. P. 56(e). That is, as Williams does not contest the initial existence of the privilege itself, Williams was required to present facts tending to establish that Blas-Phillips acted with malice.

Williams's declaration claims that she was singled out for her behavior because of Kanemaru's "personal dislike" for her and the fact that she spoke out against Barack Obama. The contention, however, appears to be based on nothing more than speculation and conjecture. Mere speculation is insufficient to

---

[4]     Because Jody's attendance at the meeting was in response to Williams's specific request for a witness, Williams cannot reasonably contend that Jody's presence defeats the qualified privilege.

create a dispute of material fact. *See Winfrey v. GGP Ala Moana*, No. SCWC-30589, 2013 WL 3776190, at *8 (Haw. July 18, 2013) (when analyzing a motion for summary judgment, the court "is permitted to draw only those inferences of which the evidence is reasonably susceptible and it may not resort to speculation"); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (brackets in original) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2nd Cir. 1995))); *Brothers v. Gen. Motors Corp.*, 658 P.2d 1108, 1110 (Mont. 1983) ("Speculative statements are insufficient to raise a genuine issue of material fact."). Thus, Williams has not shown that the Circuit Court erred in granting Defendants summary judgment on her defamation claims.

B.     Intentional infliction of emotional distress

Williams contends that Defendants' alleged accusation that Williams was a racist constitute an IIED. The elements of IIED are "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008) (quoting *Hac v. Univ. of Haw.*, 102 Hawai'i 92, 106-07, 73 P.3d 46, 60-61 (2003)).

"The question [of] whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." *Id.* (quoting *Takaki v. Allied Mach. Corp.*, 87 Hawai'i 57, 68, 951 P.2d 507, 518 (App. 1998). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tseu ex rel. Hobbs v. Jeyte*, 88 Hawai'i 85, 93, 962 P.2d 344, 352 (1998) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *Young*, 119 Hawai'i at 425, 198 P.3d at 688 (citation and internal quotation

6

marks omitted). *See also Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 387, 14 P.3d 1049, 1068 (2000) (holding that employer's shouting at and abusive manner toward employee, including public chastisement about attire and comportment, were not outrageous as a matter of law)).

We cannot declare, on the record before us, that the Defendants' alleged accusation, representing an opinion based on disclosed facts, was "without just cause or excuse and beyond all the bounds of decency[,]" *Fraser v. Morrison*, 39 Haw. 370, 375 (Haw. Terr. 1952), *abrogated on other grounds by, Hac v. Univ. of Haw.*, 105 Hawai'i 92, 92, 73, P.3d 46, 46 (2003); nor can we say that a reasonable person would be unable to adequately cope with the comments, characterizations, and reprimands arising from the Defendants' workplace investigation. Defendants' alleged accusation does not reach the high standard of outrageousness necessary to maintain an IIED claim; thus, this claim fails as a matter of law.

C. Punitive damages

Williams argues in her reply brief that the matter of punitive damages should be left to the jury because her defamation and IIED claims should have survived summary judgment. Because we disagree with her underlying premise, we disagree that punitive damages remains a viable jury question.

Therefore, the April 19, 2011 Final Judgment is affirmed.

DATED: Honolulu, Hawai'i, August 20, 2013.

On the briefs:

Shawn A. Luiz
for Plaintiff-Appellant.

Patrick H. Jones and
Leighton N. Hara
(Marr Jones & Wang)
for Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge